Next case is William Warmless v. Secretary of Veterans Affairs, 2010-7007. Mr. Crye. Your Honors, may it please the Court. From time immemorial, Congress has recognized its moral duty to provide compensation to veterans injured in the honorable service of their nation. Section 5313 carves out a narrow exception that it applies only to veterans incarcerated in a federal, state, or local penal institution. Or did. Section 5313 did. Did, at the time of his being in the institution. Before 2006, correct. Indeed, Your Honor. For two reasons, that pre-amendment version of the provision did not cover private prisons. Can I ask you a question that is probably easy to answer, but it occurred to me in thinking about this case. Is there an issue of retroactivity here? The statute has been changed, presumably in order to, you may take issue with the presumably, but in any event, it has been changed in order to effect a statutory fix of this potential problem. Why is it that we shouldn't give retroactive effect to the revised statute? Your Honor, on page 41 of 13 of the government's brief, they've basically effectively disclaimed any retroactivity. Yeah. Do you, obviously you embrace the disclaimer. I'm wondering whether principles of retroactive, there's certainly no reliance here. I mean, he hasn't gone out and bought a Cadillac based on his hope and expectation that he would receive a lot of extra funds. I mean, it's found money if it comes to him, right? Well, Your Honor, he did serve in the military with the expectation that he would receive certain compensation if he was injured. And that's a package of what the government promises to veterans when they serve. And so I do believe there are reliance interests at stake here. Also, I pointed out that I don't think there's a, or I think the retroactivity argument here is very weak in light of this court's decision in Princess Cruz's. That case made clear that even when a statute purports to clarify the law, the same standards of vested interests under the sort of land graph analysis prescribed by the Supreme Court apply. So I don't think it's surprising that the court below and the agency below didn't argue that there would be any retroactive effect here. Okay. No, I, it's, it's. So I just wanted to get a sense of where you were on that. For two reasons. The pre-amendment version certainly does not apply here. First, because the plain meaning of the statute excludes private prisons. And second, because even if it were ambiguous, the veterans canon requires the court to resolve that ambiguity in favor of the veteran. But he was a state prisoner. Otherwise, how would he have gotten into this, this subcontracted private prison? We absolutely agree he was a state prisoner, Your Honor. But the statutory text is very clear that it's the status of the institution, not the status of the individual, that matters. What do you think it would take to make something a state prison? I mean, let's say, for example, that you have a building that is owned by the state and you have private contractors. It's a, it's a prison. It's owned by the state and private contractors provide the food service and the maintenance of the building. That's still a state prison, right? Your Honor, that would indeed be a more difficult case. And certainly there are situations where you have a state-owned but privately operated prison. What we have in this case is a privately operated prison. Your Honor, I understand. But I, I mean, one of the, one of the problems is if we, if we were to say that this is, there's a distinction to be made based on the, some degree of involvement of a private entity, I, I, we would need to try to understand what it would take to trigger that. What about the state building? The state owns the building, but a, it, it contracts out all of the guard services, the, the operation of food services, maintenance, everything else to a private entity. Is that a state prison? No, I agree, Your Honor. That would be a much more difficult case than what we actually have. How would that difficult case be resolved in your view? After 2006, it would be resolved very easily. No, how, how about, ask Mr. Wanless, if he were in such a place. If, I mean, the issue would never arise, but had, had, hypothetically had that been the case, you know, we would still make an argument that private operation of the prison. But I concede that dictionary definitions and ordinary usage do look at both ownership and operation when deciding whether something's a private prison and a state prison. So that would be a harder argument. It would be something where I do think there would be reasonable arguments on both sides. But I think that when the prison is operated, owned, and maintained in the sense of run by a private entity, the ordinary usage and the most natural meaning of the term state prison does not include a prison of that nature. And there's overwhelming evidence of that ordinary evidence of common understanding set forth in the briefs. Cases, statutes, newspaper articles consistently talk about state prisons and private prisons as opposites. Examples include statements like, the cost of housing a prisoner in a private prison would be less expensive than a state prison, or the desire to earn a profit greatly distinguishes private prisons from state prisons. On pages 699 to 704 of the Joint Appendix, there are 43 examples like that that we found as a result of our search of ordinary meaning, and not one that we turned up to the contrary. If Section 53.13 were really ambiguous, surely the Secretary could have found some case, statute, or article referring to a private prison as a state prison. But there's not one. And in fact, if there were any doubt, I'd just like to direct the Court's attention to, this was in the record of the case below before the Court of Veterans' Appeals. On page 12 of the Secretary's brief, I'd just like to quote for the Court. Appellant maintains that Davis Correctional Facility is not a state penal institution. The Secretary does not dispute the literal interpretation of state penal institution. However, the Secretary's position in this case has been quite clear that an absurd result would result if the Court gave literal import to the statute. That's what I was going to ask you about, the absurd result. The State contracts out the care and imprisonment of certain prisoners, not for the purpose of giving them higher compensation, extra compensation, but for its own convenience. So wouldn't this be a windfall to Mr. Warnless if he got extra compensation simply because of this management choice of a state prison? Not at all, Your Honor. We certainly agree that there is an absurd result exception to the law. Not at all? Not even close? I don't agree that it's an absurd result. But before I explain why not, I'd like to stress that that is a very demanding standard to meet. As Justice Kennedy put it, the absurd result exception is narrow and limited to situations where it is quite impossible that Congress could have intended the result, and where the alleged absurdity is so clear as to be obvious to most anyone. That standard is just not met here for two reasons. There are two reasonable grounds to distinguish between private and state prisons for purposes of Section 5313. One is that the nature of the link between the state funding and the prisoner is more attenuated in the case of private prisons. And the second is just as a matter of history, private prisons have a long history of providing less adequate conditions of confinement. Is that the basis for the argument that the conditions are different in a private prison versus one in a state-run penitentiary? I mean, as a matter of historical fact, they are different. And our position is that that is a rational basis why a Congress could rationally have drawn that distinction in the statute. And, again, I would just stress that that's a very low standard for us to meet. We don't have to show that this was Congress's actual motivation. We certainly don't have to show that a rational Congress would be compelled to make this distinction. We just have to show that a rational Congress could have believed this distinction made sense. And that standard is met for those two reasons. And as long as we meet that low standard, the plain meaning of the statute is what governs. It seems to me that the ambiguity in this statute – well, I understand that you don't agree that it's ambiguous – the ambiguity, if any, in the statute stems from the problem that one could well say the words state, local, and federal, or federal, state, and local, or whatever order, as one often does in referring to – that's a catchphrase that's used in a lot of settings – but one could intend that to be a comprehensive description of all places where governmentally incarcerated people are kept. It would be quite different if the language of the statute had said, you know, non-private, state, local, and federal institutions. But the ambiguity, it seems to me, stems from the question that you have to ask, was Congress trying to leave anything out, or were they intending to cover every place where a prisoner under state, federal, or local law was being kept? Now, the language obviously is not squarely in the government's corner on that, but it does open the question, it seems to me, as to whether that was what Congress intended. Well, we know it wasn't Congress's intent to cover all prisons, because, for example, foreign prisons conceivably aren't covered. So that's one example. I mean, there are a number of exceptions expressly written into the statute for veterans incarcerated less than a year, veterans in mental institutions, or – Right, but a mental institution – if a mental institution were a, presumably, a criminal facility, I mean, if it were, you know, the mental institution, such as in Butner, North Carolina, which is a federal prison, there wouldn't be benefits, right? Well, there would still be the same sort of duplicative state funding consideration, because it would still be a veteran supported at public expense, who could nevertheless continue to receive benefits. So I don't think it's the – Was the original statute – when the original statute was enacted, was there subcontracting out to private prisons? There have been examples of private prisons all the way back to the 19th century. So, you know, although there are certainly more of them probably now than there have been at various times in history, the argument that the concept of a private prison must have just been totally foreign to Congress, I don't think, is borne out by the historical record. You're saying if Congress knew about the use of private prisons, then they should have put it in there? Yes, and as they did in 2006, which I think sort of illustrates what the appropriate relationship between courts and Congress is, is that if there's something about the statute that Congress thinks needs improving, then this court enforcing the statute according to its terms leaves it open for Congress to then come back and amend the statute as they did. To be honest, I could deserve the rest of my time for rebuttals. We will save it. Thank you. Mr. Sweet. Thank you, Your Honor. May it please the Court. In his reply briefing again today, Mr. Long, this relies extensively on the candidate's statutory construction, that interpretive docs should be resolved in favor of the veteran. And he suggests that if there's any ambiguity in the actual words used in the statute, that under the canon the case should be resolved in his favor. But maybe there's no ambiguity. Federal, state, and local doesn't apply. This is a private institution. Well, I believe that there is no ambiguity, but that the lack of ambiguity goes the other way, Your Honor, and that it points to the fact that the statute unambiguously includes privately operated, state-funded penal institutions. And I think that comes from the plain meaning. Now, I can see that the actual statute does not contain a definition of the term, but under Norman, towards the statutory interpretation, I think that you need to look at the plain meaning in legislative history. And this Court's recent decision in Niersen versus Sackey recognizes that you can look at all those traditional categories of interpretive guidelines before you resort to the canon of statutory construction. Can a later Congress interpret an earlier Congress? A later Congress, and in this case, they did offer a clarifying amendment. Now, that does not definitively resolve the issue. But I think that the Veterans Court did give it the proper weight in concluding that that was additional evidence of the fact that the term does include privately operated, state-funded penal institutions. Who would need to give the Veterans General Counsel letter any deference, even Skidmore deference? Yes, I believe it's entitled to Skidmore deference, which would be that it's entitled to the deference that the agency deserves as a institution. Not a Chevron deference, but just deference in the sense that if it makes sense, then we should at least consider it. Well, correct. There was no formal rulemaking, so it would not get Chevron deference. So if we agree, we defer? But I think you have to weigh the expertise of the agency in considering it. But the expertise in statutory interpretation or determination of veterans' benefits? Determining of veterans' benefits. Let me ask you how you get there from here, question, with respect to statutory language. Who is incarcerated in a federal, state, or local penal institution? Correct me if I don't have your position down exactly right, but I take it you would say, well, what that really means is incarcerated in a federally, state, or locally funded penal institution, and it's the sponsorship or funding that converts the institution into a state or local penal institution, not who happens to be in charge of the place and the contractual or agency relationship between the state and the person that's running the institution. Is that right? Correct, Your Honor. I think, throwing on your earlier questioning, I think the term leaves open, what does the relationship have to be between the state and the penal institution in order to bring the penal institution under the umbrella of this definition? I think if you look at dictionary definitions in statutory context, it's pretty clear that state funding is sufficient to bring the institution under the umbrella, and to the extent there's any doubt, I think the legislative history makes it abundantly clear that funding was what Congress was really concerned about. But, of course, you would be in big trouble if you were making the same argument in a lot of other contexts. For example, if you were arguing, just to pick one out of the blue, that a particular employee who is, let's say, immune from state and local taxation because they are a federal, local, or state employee, that immunity would not apply to a contract employee working in that prison. I would think you would agree with that, would you not? Correct. I think even in the 1983 context, courts have recognized that while private employees are not entitled to qualified immunity, privately operated prisons do fall under Section 1983. Well, actually, I suppose that's right. But I think in my tax example, it would come out differently, I take it, that that would be a private employee. Let me see if I have it. What I'm saying is there are a lot of settings in which, and maybe the 1983 setting is a counterexample, but there are a lot of settings in which a contract employee, even though working for a contractor who is doing entirely state work, is nonetheless a private employee for purposes of taxation, for purposes of all sorts of benefits, and so forth. Generally, that's true, wouldn't you agree? Okay, yes, I believe that's true, yes. Maybe in the 1983 qualified immunity case it's different. Right, but I think what we're dealing with here is we're dealing with the institution and not the individual. I think one thing that may help to distinguish the two is that we're dealing here with prisons, which is traditionally only the government had exclusive authority to incarcerate individuals. That is very different from an area where Congress heavily regulates an area. This is something that only the federal or state government has the authority to engage in, and it's delegating that authority. But absent that delegation of authority, Davis couldn't operate. It would probably face criminal sanctions if it tried to lock people up without government authority. But aren't you focusing on the incarceration language rather than who runs the institution? We agree it doesn't matter who runs it, but we think it matters who funds it. And that comes from, I think the dictionary tells you that that's a sufficient relationship to bring it under the statutory term state penal institution. But that would be a focus on incarceration and the rationale for the incarceration, either by state, local, or federal? Well, I think it's a focus on who's paying for the penal institution. I think absent the state paying the per diem for Mr. Wanless, I don't think there's any dispute that Davis would not exist but for the state funding that it received. So the state is paying for the prison, in essence, as I'll point out. And I'd like to turn briefly to legislative history. To the extent that there's any ambiguity as to what the meaning is, Congress clearly was concerned with wasteful and duplicative spending that would result from requiring taxpayers to maintain a veteran's lifestyle while at the same time those same taxpayers were being required to maintain the veteran in prison. Therefore, Congress was clearly concerned with who was paying for the prison, not with who was operating it. And the purpose of 5313, therefore, is to include all state-funded penal institutions. Now, Mr. Wanless, in his reply brief, quibbles with how direct the funding of Davis was, but the fact of the matter remains that the taxpayers of Oklahoma paid $43.57 every day to maintain Mr. Wanless at that facility. And now he's coming here asking this court to require those same taxpayers to pay to, again, support him by maintaining his full benefits. And I submit that's the precise double funding that Congress was concerned with avoiding in this case. Therefore, if your honors have no further questions, we respectfully request that the decision of the veterans court be affirmed in its entirety. Thank you, Mr. Sweet. Thank you. Mr. Cry has a little time, about three and a half minutes. Thank you, your honors. I just have two points to make. First, with regard to this idea that state prison means state-funded prison, under the plain meaning rule, what matters is the ordinary meaning of the statutory terms. And if the phrase state prison actually, in ordinary and most natural usage, means state-funded penal institution or state-funded prison, the secretary would have been able to find examples of that usage. But the fact remains you have 43 examples of sources that are just patently inconsistent with the idea that state funding is enough, and they still have not cited a single example. I made this point in my opening reply brief, and now months later we're at oral argument, and they still haven't come up with a single example from ordinary common usage of a state-funded prison being referred to as a state prison. That's just not the ordinary, plain, and natural meaning of the terms. Their entire case, to the contrary, is based on dictionary definitions. But I want to be clear. There is no dictionary definition that says state prison is state-funded prison. What they've done is they've taken a dictionary definition that says a state prison is a prison maintained by the state, then gone to the dictionary definition of maintain and, like, cherry-picked one out of about seven definitions that says, in some context, maintain can mean providing funding to, and therefore put those two things together and said state funding means state prison. Well, that, again, just is not enough to establish ordinary meaning. If that were the case, there would be cases, there would be articles, there would be some evidence that an ordinary common understanding, a state-funded prison, a prison that is connected with the state only in the indirect sense that its private proprietor receives funds under a contract is a state prison, and there is just not that evidence of ordinary meaning in front of the Court today, despite ample opportunity for the Secretary to provide it. The second point I'd like to make is on the veterans canon, and especially in light of this Court's recent Nielsen decision that the Secretary referred to. I want to make clear that we fully agree that there are situations where the statutory text alone can be ambiguous, but there are other indications of Congressional intent that are so persuasive that they make the statute unambiguous. So a case where you had an unambiguous statutory text, but there was just compelling legislative history showing that Congress intended it to mean one thing, and that legislative history might be enough to make the text unambiguous. And under Nielsen, and, you know, certainly I don't think we've ever claimed otherwise, that could be enough to make the statute sufficiently unambiguous that you would not apply the veterans canon. But the question remains, is this that case? And no, it's not, because what we have here is text that, you know, we don't think is ambiguous. At worst, it's ambiguous. And then we have legislative history that is just totally uninformative. We have two-floor statements from the House of Representatives, you know, not even addressing private prisons, but just making statements about the general purpose or general motivation for the statute. And we know those statements aren't representative, because the Senate legislative history is directly to the contrary. So to try and paint this as if this is a case where the legislative history resolves the ambiguity in the statute, well, no, it doesn't. It just compounds the ambiguity. You have, at worst, ambiguous text. You have totally opaque and unilluminating legislative history. And it's precisely that sort of case where even under Nielsen, and certainly even more so under other cases like Sersily, where this court's also invoked the veterans canon, that that ambiguity must be resolved in the veterans' favor. That's especially important in cases like this involving service-connected disability compensation, because the Secretary of Complaints, he wrote the duplicative state funding that the citizens of the state of Oklahoma are being required to pay. But the fact remains that money is not a gift to Mr. Wallace. It's compensation that the government owes him because he was injured while honorably serving his country. And unless Congress, in clear terms, in clearly expressed intent, has taken that money away, it's this court's duty and responsibility to uphold it. And we would ask the court to do that today. Thank you, Your Honor. Thank you, Mr. Croy. We'll take the case under advisement.